FILED (DROP BOX)

APR 15 2026



AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| **Shannon Farazi**<br>Plaintiff<br><br>v.<br><br>**HOME DEPOT U.S.A., INC.**<br>**("Home Depot")**<br>6200 E Lake Sammamish PKWY SE,<br>Issaquah, WA 98029<br>Defendant, | **Case No.: 2:26-cv-00586-RAJ**<br><br>**Memorandum of Facts and Law**<br><br>**Title VII of Civil Rights Act of 1964 and Retaliation, among others**<br><br>**A) Title VII of the Civil Rights Act of 1964** (from initial complaint: race, national origin, disability, age, sex, marital status (Exhibit CO#3 (PE26)), etc.<br>**B) Americans with Disabilities Act** (from initial complaint (Exhibit CO#3 (PE26)) and medical note (Exhibit CO#2 (PE25)).<br><br>**C) Age Discrimination in Employment Act** (from initial complaint (Exhibit CO#3 (PE26)).<br>**D) Fair Labor Standards Act (FLSA)**<br>**E) Broader State Laws Coverage – WLAD**<br><br>Noting FRPC 83<br><br>**Standard Schedule** for reply<br><br>FILED DATE: 04/15/26 |

**Requesting a hearing due to fraud upon the Court by the Opposing parties.**

**OVERVIEW**

This case concerns violations of **federally and state-mandated** workplace safety obligations under OSHA (mandated in <u>all states</u>) and WISHA (mandated implementation under <u>Washington State Implementation Authority</u>), **unlawful discrimination** (Under <u>Title VII</u>) in response to protected workplace reporting, and **subsequent illegal retaliation** against the Plaintiff (*Please See* above Caption detail). The Plaintiff alleges that these actions were undertaken **knowingly and maliciously, with the intent** to cause harm, delay proceedings, and silence lawful reporting activity (WLAD). To the extent supporting documentation exists, it further corroborates the factual allegations; however, at this stage, the Court must accept the well-pleaded allegations as true.

At **a broader level,** the misconduct described aligns with patterns identified by federal anti-fraud initiatives, which have highlighted systemic misuse of authority, corruption, and abuse of workers' rights in certain corporate environments.

The Plaintiff, a well-qualified employee and member of a protected class, alleges that under the supervision of previously reported and unqualified management, she was subjected to the **following <u>unlawful</u> conduct**:

**2(a).** Assignment to strenuous "hard labor" duties despite a known injury, rather than being placed on appropriate light duty, exacerbating her condition.

**2(b).** Failure to provide timely and reasonable workplace accommodation, in violation of established legal obligations under federal law,

**2(c).** Hostility and retaliatory conduct following her protected reporting and submission of medical documentation from treating professionals, including actions that aggravated her injury (grounds for aggravated assault) and failure to document a workplace injury incident,

**2(d).** Wrongful termination carried out in an injurious and illegal manner (grounds for violent acts), allegedly involving coordination between reported wrong-management and unethical human resources (HR) personnels, occurring while the Plaintiff was actively reporting misconduct through the company's own internal ethics and compliance channels as well (Please See Exhibit MFL #1 Internal Report (PE29)).

## Procedural Concerns

On April 6, 2026, Plaintiff submitted an objection regarding an Order issued by the Court (seems to be **signed by Hon. Judge Jones**) addressing appointment of counsel under the Court's pro bono program. While Plaintiff proceeds pro se at this stage, **she respectfully raises the following clarifications:**

**3(a).** Plaintiff contends that certain legal authorities cited in the Order are inapplicable to the present employment matter and include precedent that **<u>does not</u>** directly address the claims at issue.

**3(b). Subject Matter Jurisdiction and Venue.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal laws governing workplace safety, anti-retaliation protections, and employment

discrimination, including federal statutory and regulatory schemes applicable to employment relationships.

This action is **not** brought under 28 U.S.C. § 1332 and does **not** invoke diversity jurisdiction, as it does **not** depend on diversity of citizenship and was **not** removed from state court (*Please See* Exhibit MFL #2 Cover Sheet (PE30)).

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in the State of Washington. Plaintiff was employed in a physical, on-site capacity within this District, and the alleged conduct—including failure to accommodate, retaliation, and termination—occurred within this jurisdiction. Defendant also conducted business within this District, and relevant decision-making occurred in this geographic area.

Plaintiff acknowledges that federal agency participation, including involvement of the United States Attorney's Office or any federal task force, **is discretionary and not required** for maintenance of this private civil action. Accordingly, the absence of agency participation does **not** affect this Court's jurisdiction.

Plaintiff acknowledges that **28 U.S.C. § 1345** applies only to civil actions brought by the United States and does not provide a basis for jurisdiction in this private civil action. Any prior reference to **this statute is therefore withdrawn** and should be disregarded for jurisdictional purposes due to the US Attorney's office decline on 2/23/26 (*Please See* Exhibit CO #5 Correspondence with US Attorney's Office (PE28)). (after Plaintiff's Claim of Action Submission date of 2/18/26). Plaintiff previously submitted information to the appropriate federal and state authorities regarding potential criminal violations;

however, such submissions **do not** affect this Court's jurisdiction over the present civil matter. This withdrawal is made solely to clarify the pleadings and ensure accuracy of the record. Such correspondence is provided for context only and is not intended to establish or alter this Court's jurisdiction or the legal standards governing this matter.

**To the extent amendment of pleadings is necessary,** Plaintiff submits that such amendment **is appropriate** to correct or clarify prior references and **ensure** that the pleadings accurately reflect the factual and legal basis of the claims asserted.

Plaintiff confirms that this action is properly brought under 28 U.S.C. § 1331, with supplemental jurisdiction over **related state law** claims pursuant to 28 U.S.C. § 1367. Jurisdiction is therefore **independent of any federal agency involvement.**

**3(c).** Plaintiff respectfully contends that aspects of the Order's reasoning may not fully account for the governing legal standards applicable to employment-related claims. Plaintiff does not allege improper motive but **seeks clarification** of the legal basis supporting the conclusions reached – noting the discrepancies.

## Conclusion

The justice system's **primary purpose** is to maintain public safety, uphold the rule of law, and deliver justice by investigating crimes, adjudicating cases fairly, and punishing or rehabilitating offenders. For the reasons set forth above and further detailed in **Sections 1–3,** Plaintiff respectfully requests that the Court consider the seriousness of the allegations presented in this matter, including alleged violations of **workplace safety requirements, Title VII** of the

Civil Rights Act of 1964, **anti-retaliation** protections, and other applicable **federal and state** employment laws.

## PART I – STATEMENT OF FACTS

## Count I – Retaliation (Title VII and ADA)

Alleged facts showing:

- Protected activity – Report of workplace safety (*Please See* Exhibit CO #3 Initial Reported Complaint (PE26))
- Employer knowledge – Mr. Tim (Territory manager), Mr. Kyle (Investigator), all employees knew and should have known. (*Please See* Exhibit MFL #1 Company's Internal Report (PE29))
- Adverse action – Extreme hostile environment and severe irreparable harm physically, emotionally, and impeding the future of the Plaintiff. Other witnesses were present and had knowledge of the events. **Video recordings should have been preserved by the Defendant as stated in the Claim of Action.**
- Causal link – Plaintiff contacted local law enforcement to document and witness workplace conditions after observing what Plaintiff reasonably believed to be efforts to discourage or suppress employee reporting. In connection with these observations, Plaintiff became aware of internal managerial email communications relevant to the issues raised in this action. (*Please See* Exhibit #3 FBI Report (PE3)).

## Count II – Failure to Accommodate

- Disability/medical restriction: A medical note was provided. (*Please See* Exhibit CO #2 Medical Note (PE25)).
- Request made: Multiple lawful attempts to obtain reasonable accommodation were made.
- Denial and delay: Accommodation was first delayed and later knowingly denied extension.
- Harm: Reversion of medical recovery observed by the medical team, catastrophically liable, vicariously liable, non-delegable duty negligent, failure to act, must be held accountable due to their gross negligence, reckless irreparable harm, future impediment, among others.

## Count III – State Law (WLAD of Washington)

Washington discrimination/retaliation claims are applicable as they are long-standing laws and forced silencing agreements by the employers were neutralized by State's "Silenced No More" Act, which was and is in effect during Plaintiff's employment. It is noteworthy that State law includes a longer protected class list than Title VII.

## Count IV – Outrage / Intentional Infliction of Emotional Distress (IIED)

Plaintiff alleges that the conduct described herein resulted in significant physical and emotional harm. The severity and ongoing nature of these injuries are supported by the factual allegations set forth in the Complaint.

Plaintiff further alleges that Defendant, **a corporation incorporated in <u>Delaware</u>,** engaged in conduct that reflects **<u>systemic failures in workplace management and compliance</u>**

with applicable employment and safety laws (*Please See* Exhibit MFL #3 Home Unimprovement – a blueprint for failure: **confessions by the Home Depot's own CEOs and funding management** (PE 30)).

To the extent **Defendant's submissions** mischaracterize the facts, Plaintiff respectfully disputes those mischaracterizations/misrepresentations and informs the Court that they are inconsistent with allegations. At this stage of the proceedings, the Court must accept Plaintiff's well-pleaded factual allegations as true and **draw all reasonable inferences in Plaintiff's favor**.

Accordingly, **dismissal at this stage would be improper** where Plaintiff has alleged sufficient facts to state not only "plausible" claims for relief, but factual claims supported by undeniable evidence. Entertaining anyone declaring the case should be dismissed or considered as moot will be grounds for normalizing the Defendant's recklessness and illegal misconduct.

## Damages

The Plaintiff is eligible by law to receive "any remedy" based on evidence, facts, and applicable law:

- Back pay, front pay emotional distress medical costs, attorney fees, among others.

These were consolidated in the proposed Order for Relief.

## Prayer for Relief

- Plaintiff respectfully requests judgment and proposed relief as are just and proper.

Plaintiff's claims are supported by applicable legal precedent and are based on allegations

that Defendant engaged in conduct similar to other previously adjudicated matters involving regulatory noncompliance and endangerment to public safety (*Please See* **United States v. Zhao**, No. 2:23-cr-00179-RAJ (W.D. Wash. 2024)) **(other precedents exist)**. Though in this case jurisdiction 28 U.S.C. §§ 1345 is withdrawn by the US attorney's office and must be discarded for all proceedings.

## PART II – POINTS IN ISSUE

1. Dismissal at the pleading stage is premature because the complaint provides **sufficient factual content to permit a reasonable inference of liability**. The Plaintiff doesn't have to prove everything at the initiation of the case. Only that is "plausible", which is undeniable in this case both **beyond preponderance of evidence and beyond reasonable doubt based on mountain-of-evidence provided at this time**.

2. The initial complaint was filed on **4/22/25** (*Please See* Exhibit CO #3 Initial Reported Complaint (PE26)) and wrongful retaliatory termination happened on **5/27/25** (*Please See* Exhibit MFL #4 Home Depot's Issued Form 1095-C (PE32)) knowingly, maliciously, with intent to delay, harm, and silence Plaintiff. Retaliation **alone** is enough for strong merit and standing (*Please refer* to Judiciary Notice).

3. To the extent Defendant seeks dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6), such relief would **undermine** this Court's authority, integrity, and **harm** public trust.

   Dismissal with prejudice is appropriate only where amendment would be futile. At this stage, Plaintiff has alleged sufficient facts to state plausible claims for relief. Even

assuming arguendo that the Court finds any deficiency in the pleadings, Plaintiff respectfully requested stay for court-appointed counsel to amend and cure any such deficiencies to Court's pleasing, but it was denied. **These true facts make any <u>dismissal with prejudice inappropriate</u>.**

Courts routinely grant leave to amend, particularly where a plaintiff is proceeding pro se, and amendment would not be futile (Noting: It was requested early in the case). Accordingly, dismissal, if any, should be without prejudice and with leave to amend normally. Plaintiff respectfully requests the opportunity to present evidence in support of her claims at the appropriate stage of the proceedings.

Given the nature of the allegations, Plaintiff further requests that the Court consider the seriousness and sensitivity of the matters raised. Dismissal at this stage would be premature and contrary to the interests of justice, as it would prevent full development of the factual record.

4. Plaintiff respectfully submits that certain representations and conduct by opposing counsel, as set forth in their submission, are improper and warrant the Court's consideration. While Plaintiff had anticipated the need to raise such issues due to revision adaptation of Rule 1.16 by Washington State, but circumstances now justify appropriate relief, including the potential for sanctions under Rule 1.16, 1.2(a), 1.4, 3.3, 3.4, 4.1, 8.4, 11, 15, 26, 37, 54(b), 401: Objection Relevance, Rule 403: Objection unfair prejudice, and Rule 404: Character evidence (grounds for Motion in Limine) as addressed in objection to opposing response to Motion to Sanction Opposing Counsels (R. Doc. 33).

5. The Supreme Court has explained that mixed questions of law and fact arise where "the historical facts are admitted or established, **the rule of law is undisputed,** and the issue is whether the facts satisfy the relevant statutory or constitutional standard."

Here, Plaintiff alleges that she **sustained bodily harm** as a result of actions taken by Defendant, and that such injuries were documented **both** internally and through contemporaneous reports. The dispute therefore centers on the application of the relevant legal standards to the established facts.

To the extent Defendants contest Plaintiff's allegations or rely on alternative interpretations of the evidence, such disputes **do not warrant dismissal** at this stage and instead present issues for resolution through a hearing and, if necessary, in-person.

Plaintiff further maintains that the claims asserted are supported by applicable legal authority governing employment-related harms and should be adjudicated under the appropriate federal standards.

## PART III – SUBMISSIONS REVIEW

### The Collective Opposing Counsels

A careful review of docket shows with all due respect and fiduciary duty: Plaintiff observed that Defendant's representative was unable to meaningfully participate in the meet-and-confer process or address substantive issues without deferring to unidentified third parties. Plaintiff raises this concern in the context of **Rule 37 obligations and requests that the Court ensure meaningful participation** in all proceedings and submissions.

Plaintiff respectfully submits that, **if necessary and at the direction of the Court,** Plaintiff is prepared to revise and amend the record to address the submissions of opposing counsel and **to avoid default by adjusting the relevant procedural timeline as follows:**

- Submission of claim: **February 18, 2026**
- Service is proper and done through their designated carrier: **February 25, 2026**
- First minimum response due: **March 18, 2026 (the 21-day rule would be then on 3/18/26 by 11:59 due to their mandatory electronic filing).**

Plaintiff submits that these dates reflect the operative procedural timeline relevant to the issue before the Court.

# <u>Priya B. Vivian, A.C. Estacio-Heilich, Devon J. McCurdy – submissions main issues</u>

1. Plaintiff contends that certain statements made by Defendant's counsel, including declarations submitted in support of the Motion to Dismiss, are **inconsistent** with the factual record. Specifically, Plaintiff asserts that **counsel had prior knowledge of the** timing and substance of Plaintiff's initial submission, **but presented a different account to the Court.**

2. Plaintiff further contends that materials submitted by Defendant's counsel **selectively included certain communications while omitting relevant attachments and documents,** including materials Plaintiff characterizes as evidence of reported federal violations. Plaintiff requests that **the complete record be considered.**

3. Plaintiff asserts that during meet-and-confer efforts, **Defendant's counsel was unable to provide substantive responses to key issues, frequently deferred to unidentified third parties, and did not meaningfully engage in resolving the matters raised.**

4. Plaintiff **disputes certain legal assertions** made by Defendant's counsels, including statements regarding international agreements such as United Nations Convention Against Torture, and **reserves all rights to present legal authority demonstrating otherwise.** Plaintiff references international standards, including the United Nations Convention Against Torture, as persuasive authority reflecting widely recognized prohibitions against severe mistreatment. However, Plaintiff's claims are grounded in applicable domestic law, including statutory and constitutional protections where appropriate.

5. Plaintiff reviewed the docket and Clerk Lewis already had noted the collective opposing counsels misconduct on 3/17/26 under LRC 83.1(d). The Motion to Sanction opposing counsels and consequent submissions bringing to light their wrong and unlawful assertions are just, mandatory, and appropriate. Plaintiff has reviewed the availability of default judgment under Federal Rule of Civil Procedure 55. Plaintiff asserts that Defendant's conduct, including repeated filings and representations that Plaintiff believes are unsupported, has prejudiced Plaintiff and complicated the proceedings. **This led to finding the directive by this chamber, which was shared on the last communication.**

6. Plaintiff further contends that certain legal authorities relied upon by Defendant have been misapplied and respectfully requests that the Court independently review the applicable law. Plaintiff **respectfully requests** that the Court scrutinize Defendant's

filings for accuracy and consistency with the record and applicable law, and **grant Motion to Sanction Opposing Counsels and Proposed Order for relief in favor of Plaintiff.**

7. Plaintiff notes that attorneys of record include counsel licensed in different jurisdictions, including Washington and Oregon. Plaintiff raises concerns regarding potential confusion or misapplication of state-specific legal standards; however, Plaintiff does not concede that such differences justify or excuse any inaccuracies in the filings submitted.

Plaintiff disputes statements attributed to Defendant's counsel, including assertions regarding the nature and source of Plaintiff's submitted materials. Plaintiff clarifies that the referenced materials consist of direct communications with appropriate federal agencies related to this matter and are not "online prints" as characterized in opposing submissions (*Please See* Exhibit MFL #5 (PE33) – Supplement Documents).

Plaintiff further contends that certain characterizations of Plaintiff's conduct or submissions are inaccurate and requests that the Court rely on the actual record evidence rather than counsel's descriptions.

Plaintiff provides relevant correspondence to the Court solely for the purpose of ensuring a complete and accurate record. Plaintiff states that certain individuals identified in the record were known to opposing counsel prior to the meet-and-confer process, and Plaintiff expected that this information would assist the opposing party in appropriately addressing and managing the issues in this case.

## PART IV – STATEMENT OF ISSUES IN THIS MATTER

Should the Honorable Court entertain anyone against the Plaintiff and not grant Order for Relief and Summary Judgment **in favor of the Plaintiff** to cause unnecessary delay, unlawful irreparable harm, obstruct "to do justice"? No, Plaintiff submits that the relief sought is just and proper as a matter of law and is supported by the reasoning set forth in the accompanying submissions. The procedural timeline provided reflects standard compliance with the applicable rules governing service and response periods given the collective opposing counsels' chosen litigation approach undermining:

A. OSHA is mandatory in all States,

B. Title VII accommodation Supreme Court ruling binding in all Courts,

C. Duty of Care rather than retaliation,

D. General Duty Clause for a business,

E. Crime-fraud exception for an attorney,

among others.

## PART V – ORDER SOUGH

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Honorable Court:

1) Sanction the opposing party for their improper misconducts and taking the valuable time of the Honorable Court solely to deny Plaintiff "to do justice".

2) Grant Plaintiff's Motion to Order for Summary Judgement **in favor of Plaintiff, and** the requested Order for relief kindly as **they are proper and just**. The opposing party has **"no credibility"** and their wrong assertions must be noted.

3) For the reasons set out above, Plaintiff respectfully proposes alternative mechanisms for "parallel" adjudication as this Court was informed of.

Respectfully submitted,

Shannon Farazi, Pro Se (DMD)
MAHSA Act ("Silenced No More" Act)

Thank you again!

Very Respectfully submitted at Seattle, Washington, on April 15th, 2026.

*Shannon Farazi*

Shannon Farazi

CERTIFICATE OF SERVICE
I certify that on the following date: April 15th, 2026, I served a copy of to Court and opposing via regular mail.
By: *Shannon Farazi*

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at (*City*) Seattle_____ (*State*) WA___ on (*Date*) April 15th, 2026_____

_____    Shannon Farazi_____

Exhibit MFL #1

Apr 17, 2025 at 7:35 AM

Good morning Mr. Kyle,

Hope all is well. I have received a message from Mr. Majid with your number. Do you mind letting me know of the talk topic in this message or you want me to call you directly? Thank you.

Good morning, is this Shannon?

Yes this is she.

Great, thanks for reaching out. I am the regional human resource Director for Home Depot and became aware of some workplace concerns that you have. I want to connect to listen to ensure I have the fax to conduct an investigation. Would you have a preference to discuss while you are on the clock at work or after you're off the clock? If you choose off the clock, I will still pay you for the length of our conversation and we can set up a future time.

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Shannon S. Farazi

## DEFENDANTS
Home Depot U.S.A. Inc.

**(b)** County of Residence of First Listed Plaintiff __King__
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Shannon Farazi Pro Se
3500 E LK SAM PKWY SE Unit 1-306
Sammamish, WA 98075

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | **LABOR** | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 462 Naturalization Application | | |
| | | ☐ 465 Other Immigration Actions | | |
| | | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

FILED LODGED

FEB 18 2026

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____DEPUTY

RE
ENTERED
RECEIVED

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from Another District (specify) | ☐ 6 Multidistrict Litigation - Transfer |
| ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII, Retaliation, among others 42 USC 42000e-2(a)1, 18 USC 1512, 1913 241 31

Brief description of cause: Employment discrimination & retaliation Case

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ Greater than 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 2/18/26

SIGNATURE OF ATTORNEY OF RECORD _____

## FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

*Exhibit MFL #3*
*( 8 pages)*

✕

Knowledge at Wharton Podcast

# Home Unimprovement: Was Nardelli's Tenure at Home Depot a Blueprint for Failure?

**AFTER YEARS OF A DECLINING STOCK** price, Home Depot announced the resignation of CEO Robert Nardelli on January 3. Wharton faculty members and other experts say Nardelli, a talented former executive at General Electric who came within a hair's breadth of replacing Jack Welch as head of the giant conglomerate, brought the wrong toolbox to the job after he was recruited for Home Depot's top spot in December 2000. With strategic missteps, an outsized compensation contract and a knack for alienating employees and shareholders, Nardelli turned out to be a star-crossed leader.

**JANUARY 10, 2007 • 15 MIN LISTEN**

Leadership

Subscribe wherever you listen to your podcasts.

**WITH STRATEGIC MISSTEPS, AN OUTSIZED COMPENSATION** contract and a knack for alienating employees and shareholders, Home Depot's Robert Nardelli turned out to be a star-crossed leader.

Wharton faculty members and other experts say Nardelli, a talented former executive at General Electric who came within a hair's breadth of replacing Jack Welch as head of the giant conglomerate, brought the wrong toolbox to

Case 2:26-cv-00586-RAJ Document 39 Filed 04/15/26 Page 21 of 29

the job after he was recruited for Home Depot's top spot in December 2000. He did not know the retailing business and mistakenly thought that what had worked at GE could be readily transplanted to Home Depot's more freewheeling, entrepreneurial culture. After years of a declining stock price — and a now-legendary 2006 shareholders meeting where an imperious Nardelli refused to answer questions — Home Depot announced the CEO's resignation on January 3. He walked away with a package worth $210 million.

Nardelli was immediately succeeded as CEO, chairman and president by Frank Blake, who had served as Home Depot's executive vice president since 2002. Before joining the Atlanta-based company, Blake also held senior positions at GE.

"While GE is a great source of management talent, the style of leadership that works at GE doesn't necessarily readily carry over into a company that does not have GE's traditions or GE's riveting focus on performance," says management professor Michael Useem, director of Wharton's Center for Leadership and Change Management. "GE has a deeply held, corporate cultural value around the idea of performance. If you don't get results, you just won't hold your position long. An executive leaving GE will attempt to bring what worked in the past, but at Home Depot the way of operating was decentralized. Managers had a lot of discretion and there was a free-flowing, exciting feel to working there. Nardelli tried to streamline some 2,000 stores to get control over them, which might have worked at GE, with its focus on performance. But at Home Depot, that approach to leading did not work well, given the history of the company."

According to Barry Henderson, an equities analyst at T. Rowe Price, the Baltimore, Md.-based mutual fund company, Nardelli made "two big mistakes" at Home Depot: He alienated employees and angered stockholders. Henderson says the alienation of the rank-and-file at the home improvement retailer has been largely overlooked by the business press in analyses of Nardelli's departure.

"The Home Depot culture is distinct in retail," Henderson explains, describing it as having been "extremely entrepreneurial and very customer focused" when Nardelli arrived. Nardelli concentrated on overhauling Home

Case 2:26-cv-00586-RAJ   Document 39   Filed 04/15/26   Page 22 of 29

Depot's business processes, which did need to be addressed, but he "overfocused" on the processes and swept aside the elements that made Home Depot special.

For one thing, Nardelli angered people by firing long-time Home Depot executives and bringing in GE alumni, according to Henderson. He also increased the number of less knowledgeable part-time workers at Home Depot's stores, which left full-time employees fuming and led to a diminishment of customer service, one of the company's strengths. From the very beginning of his tenure, Nardelli, now 58, "damaged morale, and he was seen as a real threat to the Home Depot culture," Henderson says.

As an example of how a high level of commitment to customers made Home Depot a success, Henderson recounts a vignette from the book *Built from Scratch: How A Couple of Regular Guys Grew The Home Depot from Nothing to $30 Billion*, by company founders Bernie Marcus and Arthur Blank. In the 1990s, a man entered a Home Depot store to return a set of tires and obtain a refund — even though Home Depot did not sell tires. The employee at the service desk called corporate headquarters for guidance. The employee was told to ask the customer how much he had paid for the tires and to give him a cash refund from the register drawer.

"The tires," says Henderson, "were hung near the service desk as a reminder that the customer is always right — the 'lifetime value of the customer' is how you would say it in business-school terms. [Home Depot] didn't care about shrink [the percentage of products lost through theft or error]. Nardelli was exactly the opposite. Shrink was one of the first things he attacked when he got there."

### Looking for Growth

In fairness to Nardelli, he had his work cut out for him when he joined Home Depot, according to Wharton management professor Lawrence Hrebiniak. "Nardelli came into a very tough situation. The original entrepreneurs had built an amazing business" that had shown tremendous growth. Nardelli was under intense pressure "to continue that growth."

Case 2:26-cv-00586-RAJ    Document 39    Filed 04/15/26    Page 23 of 29

In terms of raw numbers, Nardelli did what appeared to be a commendable job. Henderson estimates that for Home Depot's 2006 fiscal year, which ends January 31, 2007, the company will post sales of $90.4 billion, almost twice the sales figure of $45.7 billion recorded for fiscal 2000. During that same period, net income rose 130%, from $2.5 billion to $5.9 billion, according to Henderson's estimates. Home Depot's return on average invested capital was also noteworthy during Nardelli's tenure: It stood at 16.8% for fiscal 2000, peaked at 19.5% in 2005, and will be 17.4% for fiscal 2006, Henderson says.

Still, investors did not bid up the stock. The reason, according to Henderson, was that investors always questioned whether the company's top-line growth was sustainable. They also were concerned that the good numbers came at the expense of customer service. "What he appeared to do was cut SG&A [sales, general and administration] to make his numbers for the year, to hit his earnings-per-share growth targets," says Henderson. But Nardelli hurt morale in the stores. "That, combined with a pay package that was not linked to the stock price, really angered investors. Those were the two reasons he had to go."

Much attention has been focused on Nardelli's $210 million payout. How, many ask, can such an enormous sum be given to someone who failed as a CEO? Wayne Guay, a Wharton accounting professor whose research focuses on issues related to executive compensation and corporate governance, says such big figures are sometimes misunderstood. The $210 million was not given to Nardelli to make him leave; rather, that amount was negotiated by him and the Home Depot board in 2000 to lure him away from his lucrative position at GE.

## A Kind of Insurance

The severance pay, says Guay, served as a kind of insurance policy for Nardelli. If things did not work out at Home Depot, he wanted to walk away with enough money to make him "whole" for having left GE and running the risk that he would fail at his new position and be replaced. He adds that if Nardelli had succeeded at boosting Home Depot's stock price to some significant degree, which would be worth billions of dollars to shareholders, it is likely that few people would now be complaining about the package.

Case 2:26-cv-00586-RAJ   Document 39   Filed 04/15/26   Page 24 of 29

"It's almost inevitable these payouts will draw angst from shareholders for poor performing CEOs, but that's why the CEOs negotiate these contracts," Guay says. If Home Depot stock had gone up just a few points each year during his tenure, Nardelli "more than makes up for this compensation package. At the time this contact was signed, presumably people thought it was a reasonable thing to do."

Hrebiniak agrees. "I think Nardelli's personal style, his gruffness, the board-meeting fiasco — all of that was important. But if he hadn't made strategic mistakes, his personal style wouldn't have come into play as much. Even his compensation, which is obnoxious, would not have been as big a deal."

According to Home Depot, the $210 million package included a cash severance payment of $20 million; acceleration of unvested deferred stock awards valued at about $77 million; unvested options worth about $7 million; bonuses and long-term incentive awards of some $9 million; a $2 million 401(k); previously earned and vested deferred shares worth approximately $44 million; retirement benefits worth about $32 million; and some $18 million in "other entitlements."

## The Board's Responsibility

Ultimately, of course, Home Depot's board was responsible for hiring Nardelli and giving him a lucrative package. Such huge amounts of money, on their face, continue to strike many people as exorbitant. Some management experts believe that boards remain insular and too beholden to the chief executives they hire, and that over-the-top compensation for CEOs will not be reined in until boards begin to assert their independence.

"I think the big lesson from this situation is a reminder about how far removed governance of firms is from criticism from the outside community," says Wharton management professor Peter Cappelli. "There is a host of arrangements that companies use — especially compensation consultants, groups of peer companies and other defenders of the status quo — that tell the companies that what they are doing for their executives is appropriate. Of course, the executives themselves have a huge interest in believing this, and that carries over to their roles on boards of other companies. So the complaints of shareholder groups don't really matter enough to drown out the support system that says these arrangements are fine."

Cappelli adds: "There is no 'market' driving executive compensation. None of these deals is set by the market. Every one is negotiated by the CEO with the people who will ultimately report to him. So, guess how those negotiations are likely to go."

×

Wharton's Useem says the Nardelli case is a reminder that "outsized pay packages raise many questions about the judgment of boards of directors." In Useem's view, there are two criteria for determining whether compensation packages are too generous. First is the sticker shock: It "just seems crazy on the face of it that somebody can be deemed to be worth $210 million" for six years of work, Useem notes. Second is whether large sums are paid to a CEO as the price of the company's shares declines.

In general, says Useem, "When compensation levels go north of $10 million a year, as so many of them do now — and Nardelli's was more than that — there is doubt in the minds of employees that the CEO they are working for is indeed a person who puts the company's interests ahead of his or her own. The argument that [author] Jim Collins powerfully makes in *Good to Great* is that effective leading in the companies he studied was defined by, one, an unrelenting focus on getting results by the CEO and the top management team and, two, an abiding humbleness in everything they did. Not in being meek, but in putting self-interest last and the company's interests first. Very high levels of pay, just on the face of it, seem to tell the average employee that the CEO — and Nardelli in particular — does not."

Nardelli's actions cemented that idea with employees and shareholders alike. Although Nardelli later apologized for his behavior at Home Depot's 2006 annual meeting, Useem says his performance at that session will forever serve as a symbol of the "tone deaf" chief executive who ignores shareholders and displays an "arrogance of style."

He adds that it is too early to judge whether Home Depot's board, in appointing Blake, chose the right person to replace Nardelli. But the board did take an important step concerning governance in a decision that was made on January 4, the day after Nardelli's departure, but not disclosed until a regulatory filing on January 8. According to the Associated Press, the company said it would begin requiring that two-thirds of its independent directors approve any compensation to the CEO. Previously, only a majority of independent directors was needed to approve CEO compensation.

What is the ultimate answer to fairly compensating a CEO? According to Guay, boards should tie his or her compensation to the firm's stock price — not to annual sales, net income, market share or any other metric.

✕

✚    **Comments**

© **Knowledge at Wharton. All rights reserved. Knowledge at Wharton is an affiliate of the Wharton School of the University of Pennsylvania.**

**FEATURED FACULTY**

Lawrence Hrebiniak

Michael Useem

Peter Cappelli

Wayne Guay

**WRITTEN BY**

Knowledge at Wharton Staff

74697728

HOME DEPOT USA INC.
2455 Paces Ferry Road C-18
Atlanta, GA 30339

Exhibit MFL #4

117815-41-041485
 SHANNON FARAZI

600120

| Form 1095-C | Employer-Provided Health Insurance Offer and Coverage | | | OMB No. 1545-2251 |
|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ Do not attach to your tax return. Keep for your records<br>▶ Go to www.irs.gov/Form1095C for Instructions and the latest information. | ☐ VOID<br>☐ CORRECTED | | **2025** |

### Part I  Employee | Applicable Large Employer Member (Employer)

| 1 Name of employee (first name, middle initial, last name)<br>HANNON   S   FARAZI | 2 Social security number (SSN) | 7 Name of employer<br>HOME DEPOT USA INC. | 8 Employer Identification number (EIN)<br>58-1853319 |
|---|---|---|---|
| 3 Street address (including apartment no.) | | 9 Street address (including apartment no.)<br>2455 Paces Ferry Road C-18 | 10 Contact telephone number<br>800-555-4954 |

| 4 City or town<br>SAMMAMISH | 5 State or province<br>WA | 6 Country and ZIP or foreign postal code<br>USA 98075 | 11 City or town<br>Atlanta | 12 State or province<br>GA | 13 Country and ZIP or foreign postal code<br>USA 30339 |
|---|---|---|---|---|---|

### Part II  Employee Offer and Coverage       Employee's Age on January 1       Plan Start Month: 01

| | All 12 Months | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sept | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 Offer of Coverage (enter required code) | | 1K | 1K | 1K | 1K | 1K | 1H | 1H | 1H | 1H | 1H | 1H | 1H |
| 15 Employee Required Contribution (see instructions) | $ | $101.83 | $101.83 | $101.83 | $101.83 | $101.83 | $ | $ | $ | $ | $ | $ | $ |
| 16 Section 4980H Safe Harbor and Other Relief (enter code, if applicable) | | 2C | 2C | 2C | 2C | 2C | 2A | 2A | 2A | 2A | 2A | 2A | 2A |
| 17 ZIP Code | | | | | | | | | | | | | |

### Part III  Covered Individuals   If Employer provided self-insured coverage, check the box and enter the information for each individual enrolled in coverage, including the employee.   ☒

| (a) Name of covered individual(s) First name, middle initial, last name | (b) SSN or other TIN | (c) DOB (if SSN or other TIN is not available) | (d) Covered all 12 months | (e) Months of coverage | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
| 18 SHANNON   S  FARAZI | | | ☐ | ☒ | ☒ | ☒ | ☒ | ☒ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 19 | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 20 | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 21 | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 22 | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 23 | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 24 | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 25 | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 26 | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

For Privacy Act and Paperwork Reduction Act Notice, see separate Instructions.       Cat. No. 60705M       Form 1095-C (2025)

Exhibit MF#5 (Sup) — 1

IER's website   Inbox ×

✑ Summarize this email

**Dygert, Sara-Daisy (CRT)** ▬▬▬▬▬▬▬                                    Thu, Mar 19, 10:06 AM   😊   ↩   ⋮
to me ▾

https://www.justice.gov/crt/immigrant-and-employee-rights-section

Best regards.

Sara-Daisy Dygert
Outreach Coordinator
Immigrant and Employee Rights Section
U.S. Department of Justice, Civil Rights Division
Employer hotline 1-800-255-8155 | Worker hotline 1-800-255-7688
Mobile 202-532-5270 ▬▬▬▬▬▬▬ | www.justice.gov/ier

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and permanently delete all copies of the message immediately.

**Shannon Farazi**                                                        Thu, Mar 19, 3:02 PM   ☆
Dear Ms. Dygert, Thank you so much for hearing me out this morning and providing me with hope. I appreciate your time and candor. Yes, I believe you were on the

**Dygert, Sara-Daisy (CRT)**                                             Fri, Mar 20, 7:00 AM   😊   ↩   ⋮
to me ▾

Dear Ms. Farazi,

It was nice speaking with you.  I'm glad I could be of assistance.  Best of luck in your endeavors!

Sara-Daisy

*EXHIBIT MELUS (SVP) - 2*

**Kim, David (GOV)**
to me ▾

Mon. Apr 6, 12:56 PM (8 days ago)  ☆  ☺  ↩

Shannon:

Thanks for this context- really helpful. I will send a time to discuss this.

Respectfully.

| | David Kim |
|---|---|
| OFFICE OF GOVERNOR **BOB FERGUSON** | Senior Advisor |
| | David.kim@gov.wa.gov |
| | (360) 480-9125 |
| | Pronouns: He/Him |

*Email communications with state employees are public records and may be subject to disclosure, pursuant to Ch. 42.56 RCW.*

...

**Kim, David (GOV)**
to Sahar, me, Camille ▾

Thu, Apr 9, 4:00 PM (5 days ago)  ☆  ☺  ↩

Shannon:

Thank you kindly for taking time to share your concerns and requests with us today. Please let us know if you have any further questions or concerns.

Respectfully.

| | David Kim |
|---|---|
| OFFICE OF GOVERNOR **BOB FERGUSON** | Senior Advisor |
| | David.kim@gov.wa.gov |
| | (360) 480-9125 |
| | Pronouns: He/Him |

*Email communications with state employees are public records and may be subject to disclosure, pursuant to Ch. 42.56 RCW.*